# EXHIBIT 8

| Message0004 | |
|---|---|
| Subject: | FW: Wal-Mart Work Plan_WalMex.DOC |
| From: | Maritza Munich-Legal |
| Date: | 11/2/2005 9:09:29 AM |
| To: | Thomas Mars; Ken Senser; Michael Fung |

**Message Body**

FYI. I'll bring copies to our meeting.


~Maritza

-----Original Message-----
From: Kreml, Daryl [mailto:DKreml@WILLKIE.COM]
Sent: Wednesday, November 02, 2005 9:02 AM
To: Maritza Munich-Legal
Cc: Weinstein, Martin; Koski-Karell, Arthur
Subject: Wal-Mart Work Plan_WalMex.DOC


Good morning, Maritza.
Here is our draft workplan, which we can discuss during the call or at your convenience.
Best regards,
Daryl

<<Wal-Mart Work Plan_WalMex.DOC>>

Daryl A. Kreml
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
Main: 202.303.1000
Facsimile: 202.303.2000
Direct: 202.303.1184



****************************************************************

IMPORTANT NOTICE: This e-mail message is intended to be received only by persons entitled to receive the confidential information it may contain. E-mail messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; e-

file:///D|/Forensic Investigations/Echelon/WALMEX/Comb.../Maritza Munich Communications/Message0004[234580].htm (1 of 2)8/5/2009 1:02:20 AM

52

file:///D|/Forensic Investigations/Echelon/WALMEX/Combined Data/Maritza Munich Communications/Message0004[234580]...

Case 5:12-cv-05162-SOH   Document 40-8   Filed 07/17/12   Page 3 of 11 PageID #: 305

mail messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
*************************************************************

## Attachment

Wal-Mart Work Plan_WalMex (3).DOC

## Outlook Header Information

Conversation Topic: Wal-Mart Work Plan_WalMex.DOC
Subject: FW: Wal-Mart Work Plan_WalMex.DOC
From: Maritza Munich-Legal
Sender Name: Maritza Munich-Legal
To: Thomas Mars; Ken Senser; Michael Fung
Received By: Ken Senser
Delivery Time: 11/2/2005 9:09:29 AM
Creation Time: 11/2/2005 9:08:52 AM
Modification Time: 11/2/2005 9:09:31 AM
Submit Time: 11/2/2005 9:09:29 AM
Importance: Normal
Priority: Normal
Sensitivity: Normal
Flags: 17 = Read, Has Attachment
Size: 163413

file:///D|/Forensic Investigations/Echelon/WALMEX/Comb.../Maritza Munich Communications/Message0004[234580].htm (2 of 2)8/5/2009 1:02:20 AM

53

**WILLKIE FARR & GALLAGHER** LLP

**MEMORANDUM**
**DRAFT - FOR DISCUSSION PURPOSES ONLY**
**PRIVILEGED & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGED**
**ATTORNEY WORK PRODUCT**

TO: Maritza I. Munich
Vice President and General Counsel

FROM: Martin J. Weinstein
Robert J. Meyer
Daryl A. Kreml

RE: WalMex: Internal Investigation Work Plan

DATED: November 1, 2005

## General Overview

On September 21, 2005, Wal-Mart International received allegations of corruption in the operations of WalMex, a Mexican subsidiary in which Wal-Mart International has a 62% interest. The allegations were made in a brief e-mail from a former employee of WalMex, Mr. Sergio Cicero, to the Vice President and General Counsel of Wal-Mart International.

Wal-Mart Stores, Inc. and Wal-Mart International (collectively, "Wal-Mart") retained Willkie Farr & Gallagher LLP ("Willkie") as outside counsel in this matter and took certain measures to better understand the allegations and to preserve pertinent documents and information. This Memorandum sets forth the nature of the allegations, proposed investigative steps, and recommendations for related measures.

## Background

Cicero alleges that WalMex made various improper payments to government officials through third parties to obtain real estate and related permits, licenses, and services. Cicero also alleges that WalMex falsely recorded these transactions. Moreover, he alleges, in certain circumstances, sufficient facts to implicate U.S. jurisdiction such as the involvement of Wal-Mart officers, related communications involving U.S. instrumentalities (e.g., teleconferences with Bentonville), and inaccurate entries affecting Wal-Mart's books and records.

Cicero asserts that he maintained records of these practices while serving in the legal department of WalMex and its predecessor company. Specifically, Cicero states that he has eight binders of documentation concerning about 150 instances of improper payments and/or inaccurate accounting entries by WalMex.

DRAFT – FOR DISCUSSION PURPOSES ONLY
PRIVILEGED & CONFIDENTIAL

### Proposed Investigatory Steps

I. **Schedule.** The amount of time required for the completion of a thorough investigation will depend, in part, on the nature of information discovered throughout the various steps and the extent of cooperation from implicated parties. Currently, our goal is to complete the investigation by February 28, 2006. In any event, we recommend the following sequence of investigatory steps to make efficient use of resources and obtain the most reliable information possible. In practice, the various categories of this investigation may overlap in time because the categories are, by nature, intertwined. Nevertheless, we anticipate substantial completion of the following steps by the dates listed below:

- A. **December 15, 2005.** Willkie obtains, reviews, and analyzes pertinent documents in the U.S. and Mexico. Willkie may conduct initial interviews to gauge location and scope of documents as part of this process.

- B. **January 31, 2006.** Willkie conducts interviews of relevant Wal-Mart and WalMex employees; third party consultants, counsel, agents and representatives; and other available individuals with possible information concerning the allegations.

- C. **February 28, 2006.** Willkie analyzes all information gathered and provides oral and possibly written draft report to Wal-Mart regarding: 1) the evidence related to possible violations of law, and 2) recommended next steps.

II. **Investigatory Steps**

- A. **Documents.** Willkie recommends obtaining and reviewing the following documentation, created on or after September 21, 2000.

    1. Organizational charts or documents relating to the relationship between Wal-Mart Stores, Inc., Wal-Mart International, and WalMex, including the organizational reporting structure. The review should give particular focus to the relationship between real estate, audit, and legal personnel in the various organizations and the authority of relevant individuals to retain third-party representatives related to these purposes.

    2. Documents concerning Cicero's involvement with WalMex real estate operations, retention of third-parties, or prior allegations or records of misconduct.

        a. A priority of the document collection and review process should be to obtain the information in the eight binders of documentation Cicero purports to have in his possession. An effort should be made to reconstruct the possible contents of such binders if the materials cannot be obtained from Cicero.

**DRAFT - FOR DISCUSSION PURPOSES ONLY**
**PRIVILEGED & CONFIDENTIAL**

    3.    Documents concerning consultants, outside counsel, agents and representatives (collectively, "Third Parties") with responsibilities concerning the real estate acquisition process; the obtaining of real estate permits, licenses, and zoning variances; or representation before government officials on behalf of WalMex or Wal-Mart in Mexico:

        a.    All policies, procedures, charts of accounts, and other codes associated with the retention and direction of Third Parties;

        b.    Documents sufficient to identify all Third Parties retained;

        c.    All due diligence and personnel files and contracts and other agreements with Third Parties;

        d.    Documents concerning services performed, and monies received, by Third Parties, including evidence of methodologies used by Third Parties and explanations of successes or failures with respect to the assigned objective;

        e.    All correspondence, ledgers, check copies, wire transfers, receipts, and other data concerning payments to, or at the direction of, Third Parties.

    4.    Documents concerning any and all payments, directly or indirectly, to government officials.

B.    **Interviews.** After gathering and analyzing as many of the above documents as possible, we will assemble binders of information corresponding to the likely knowledge of each individual witness.[1] We will then conduct interviews of relevant witnesses including employees of WalMex and Wal-Mart, Third Parties, and other individuals with pertinent information who may be available to us. The list of interviewees will include every person, regardless of level or position, who (a) has specific information or personal experience relating to the above documents, or (b) has interacted with government officials concerning real estate transactions in Mexico on behalf of Wal-Mart or WalMex. We have identified the following categories of employees to be interviewed; we will expand the list as necessary.

    1.    Senior Executives and Government Relations, Real Estate, or Public Affairs personnel with responsibilities related to real estate on behalf of WalMex or Wal-Mart in Mexico or who supervised or interacted with Third Parties.

    2.    Implicated Members of the WalMex Board of Directors.

---

[1] The purpose of gathering their documents in advance of the interview is that the documents can be used to refresh the recollection of the employee, and lead to a more accurate interview. In addition, it helps minimize the need to re-interview employees to answer questions raised by the documents.

- 3 -

        3.     Relevant employees in the legal and internal audit departments of Wal-Mart or WalMex.

        4.     Third Parties with real estate responsibilities on behalf of WalMex or Wal-Mart in Mexico.

        5.     Available parties, not employed by Wal-Mart, involved in real estate transactions concerning WalMex or Wal-Mart in Mexico.

    C.     **Draft report of due diligence findings.** Upon completion of the document review and interview stages, we will summarize our findings in a draft Report of Investigation. Wal-Mart may determine that an oral report is more appropriate than a written one. The report will also include recommendations for next steps in response to the investigation findings.

III.     **Related Measures**

    A.     **Collection Procedures.** A Master Timeline will be maintained to detail every relevant event and matter that arises thorough the course of the investigation. Willkie will also keep a Master Document List to identify every document that has been reviewed. All documents will be maintained and tracked according to the name of the person from whose files the documents were obtained.

    B.     **Preventing Document Destruction.** Willkie will obtain a copy of Wal-Mart's document retention policies and recommend that orders be given to suspend the destruction of any documents that may be relevant to this matter. The suspension orders should be subject to change based on additional recommendations if at any time during the investigation evidence suggests that the suspension orders in force are not broad enough to prevent the destruction of potentially relevant documents.

    C.     **Additional document gathering and interviews.** Based on the results of the document review and interviews, we will consider gathering and analyzing further documents from individuals and/or conducting follow-up interviews via telephone in preparing our draft report and recommendations.

    D.     **Confidentiality**

        We will carefully coordinate with Wal-Mart all steps and measures of the investigation to preserve the confidentiality of this matter. Potential interviews of officers, employees, consultants, counsel, agents or representatives will be organized and conducted with utmost sensitivity to confidentiality.

    E.     **Jurisdiction**

        We will give specific consideration to the jurisdictional implications of each improper payment or accounting irregularity identified through documents or interviews. We will focus our resources and recommendations on transactions most likely to implicate U.S. jurisdiction.

**DRAFT – FOR DISCUSSION PURPOSES ONLY**
*Privileged & Confidential, Attorney-Client Communication - Attorney Work Product*

## WALMEX: TIMELINE – EVALUATION OF REAL ESTATE TRANSACTIONS
*Revised: 1/28/2010 1:31 AM*

| DATE | WAL-MART PARTICIPANTS | OUTSIDE COUNSEL | NATURE OF EVENT | DESCRIPTION OF EVENT |
|---|---|---|---|---|
| 9/21/05 Wednesday | Maritza I. Munich (Munich) | – | E-mail | Message from Sergio Cicero Zapata (SC) to Munich:<br>• he worked for the Company from 1975-2004<br>• he resigned in September 2004<br>• he was in charge when Project Bodega Teotihuacan happened<br>• he has a "memory and compilation" "about 'that time'"<br>• Munich invited to contact him if interested in confidential details about the projects<br>• accounting irregularities in projects authorized by the highest levels<br>• signs off: "I hope to meet you soon." |
| | Munich | | E-mail | Message to SC:<br>• acknowledges receipt of email<br>• requests SC's telephone number and options of dates and times to talk<br>• invites SC to call her |
| | Munich | | E-mail | Message from SC:<br>• request Munich call him on 9/22/05 or 9/23/05<br>• provides cell phone number |
| | Munich | | E-mail | Message to SC: agrees to call him on 9/22/05 |
| | Munich, Tom Mars (Mars) | | Memorandum | Memorandum to Mars advising of e-mail from SC & attaching copy of the same. |
| 9/22/05 Thursday | Munich | | E-mail | Message to SC:<br>• calls to his cell phone result in a recording<br>• requests he call her |
| | Munich | | E-mail | Message from SC:<br>• called and could not reach her<br>• provides two additional telephone numbers |
| | Munich | | E-mail | Message to SC:<br>• will be out of the office on 9/23/05<br>• invites SC to call her on 9/26/05 |
| 9/26/05 Monday | Munich | | Telephone | SC & Munich's first conversation |

58

**DRAFT – FOR DISCUSSION PURPOSES ONLY**  2
*Privileged & Confidential, Attorney-Client Communication - Attorney Work Product*

| Date | From/To | Other | Type | Description |
|---|---|---|---|---|
| 10/3/05 Monday | Munich | - | E-mail | Message from SC:<br>• has not heard back from Munich<br>• assumes there's no more interest "in this important issue"<br>• mentions 9/28 Reforma newspaper article about new Association against supermarkets; says he's met them; that they are trying to organize neighbors near WMT stores |
| | Munich | - | E-mail | Message to SC: invites SC to call her that afternoon |
| | Munich | - | E-mail | Message from SC: will call that afternoon |
| 10/4/05 Tuesday | Munich | - | E-mail | Message to SC:<br>• as per most recent conversation, Munich has hired an independent attorney to meet with SC and review the information he indicates he has regarding WALMEX<br>• on 10/5/05 Juan Francisco Torres-Landa (Torres-Landa) will be calling SC to schedule a day and time to meet |
| | Munich | Barrera, Siqueiros & Torres Landa (BTS) | E-mail | Two messages to Torres-Landa forwarding email communications from SC |
| 10/5/05 Wednesday | Munich | BTS | E-mail | Message from Torres-Landa to SC, cc to Munich: has called SC's phone numbers; has been unable to contact him. Invites SC to call him to schedule a meeting. |
| | Munich | BTS | E-mail | Message from Torres-Landa: sends proposed engagement letter. |
| 10/7/05 Friday | - | BTS | Meeting, E-mail | • BTS attorneys Torres-Landa and Ricardo Pons (Pons) meet with SC to discuss allegations<br>• send Munich Memorandum of meeting |
| 10/10/05 Monday | Munich | BTS | E-mail | Message from Torres-Landa:<br>• confirms instructions to meet with SC a second time to attempt to get SC to produce documents evidencing details of allegations<br>• agrees to provide English translation of 10/7/05 e-mail |
| 10/11/05 | Munich | BTS | E-mail | Message from Torres-Landa:<br>• meeting with SC confirmed for 10/13/05<br>• told SC they would be requiring details to ensure conversation was about concrete situations and not speculation |
| 10/13/05 Thursday | Munich | BTS | E-mail | Message from Torres-Landa:<br>• sent at 9:18 pm; provides Memorandum of meeting with SC on 10/13/05 |
| 10/14//05 Friday | Munich | BTS | E-mail | Message to Torres-Landa (7:42 am) acknowledging receipt of message and requesting Torres-Landa to call her during the morning. |
| | Munich, Tom Hyde (Hyde) | - | E-mail | Message to Hyde requesting meeting that day. |

59

**DRAFT – FOR DISCUSSION PURPOSES ONLY** 3
*Privileged & Confidential, Attorney-Client Communication - Attorney Work Product*

| | | | | |
|---|---|---|---|---|
| | Munich, Hyde, Karen Demory (Demory) | - | E-mail | Hyde to Demory; Demory to Hyde: 3:00 pm confirmed for Hyde meeting with Munich |
| | Munich | BTS | E-mail | Message from Torres-Landa confirming SC is available to meet on 10/28/05 or any day the week following. |
| | Munich, Hyde | - | Meeting | • Munich & Hyde meet<br>• Munich provides file folder containing, among other documents (e.g., information about BTS) copy of BTS 10/13/05 and 10/7/05 Memoranda; SC email of 9-21-05 |
| | Munich | - | | Munich has similar file folder delivered to Mars's office (Mars traveling) |
| | Munich | BTS | E-mail | Message to Torres-Landa acknowledging earlier email this date & indicating would call the following week. |
| | Munich | BTS | E-mail | Message from Torres-Landa: SC will be traveling the following week; will be difficult to confirm an appointment then. |
| | Munich | BTS | E-mail | Message to Torres-Landa:<br>• Given the nature of what SC communicated the prior day, Legal EVP & SVP have been informed<br>• Will need to agree on a coordinated plan<br>• May require investigative services<br>• To keep SC engaged, Torres-Landa to communicate tentative availability for a meeting on 10/28/05 but for SC to advise when we may communicate again to confirm |
| | Munich | BTS | E-mail | Torres-Landa confirms continuing availability to assist |
| | Munich, Mars | - | E-mail | Munich message to Mars updating on developments with SC; advising of the documents delivered; indicating he should review them as soon as possible |
| | Munich, Mars | - | E-mail | Mars acknowledges email; will review documents during the weekend |
| 10/15/05 Saturday | Munich, Mars | - | Telephone | Various messages to Mars |
| | Munich, Mars | - | Telephone | Mars reviews documents; calls Munich; agreement to retain Willkie, Farr & Gallagher (WF&G) |
| | Munich | Weinstein | E-Mail | Munich notifies Martin Weinstein (Weinstein) of intention to retain WF&G in this matter. Sends e-mail from SC and Memoranda about BTS meetings with SC. |

**DRAFT – FOR DISCUSSION PURPOSES ONLY**  4
*Privileged & Confidential, Attorney-Client Communication - Attorney Work Product*

| Date | From | To | Type | Description |
|---|---|---|---|---|
| | Munich | BTS | E-Mail | Message to Torres-Landa informing Weinstein of WF&G, with expertise in FCPA matters, will be retained to assist |
| 10/17/05 Monday | Munich | Weinstein, Daryl Kreml (Kreml) | Meeting | Meeting at WF&G, Washington, D.C., office. Discussion of allegations and initial strategy, including document preservation and briefing of senior executives. |
| | Munich, Mars, Stucky, Fung | Weinstein, Kreml | Telephone | Discussion of allegations and initial strategy, including document preservation and briefing of senior executives. Munich present in WF&G office, other Wal-Mart personnel by phone. |
| | Munich | BTS | E-mail | Message from Torres-Landa: Message has been left at SC's office about the possibility of a meeting on 10/28 or the week of 10/31; awaiting further instructions |
| 10/18/05 Tuesday | Munich | Weinstein | Meeting | Continued discussion of options for case strategy and obtaining allegedly extant documents that are basis of allegations. |
| | Mars | Weinstein | Meeting | Continued discussion of options for case strategy and obtaining allegedly extant documents that are basis of allegations. |
| 10/23/05 Sunday | Munich | BTS | E-mail | Message from Torres-Landa:<br>• Spoke to SC the prior week<br>• SC still available to meet 10/28, 10/31 or whichever date Munich chooses; only requests confirmation to set aside time in his agenda |
| 10/24/05 Monday | Munich, Mars | Weinstein | E-mail | Message from Munich to Weinstein requesting draft timeline of events in this matter |
| | Munich, Mars, Sharon Almadhoun (Almadhoun) | Weinstein | E-mail | Message from Mars: Telephone conference of 10/24/05 cancelled due to agenda conflict; rescheduled for 10/25/05 |
| 10/25/05 Tuesday | Mars, Munich | Weinstein | Meeting; Telephone | Weinstein calls Mars & Munich. Discussion regarding next steps; agreement Munich to meet with SC and Torres-Landa on 10/28/05 |
| | Munich | Weinstein, Kreml | E-mail | Kreml sends Munich first draft of Timeline |
| 10/26/05 Wednesday | Munich | BTS | Telephone | Torres-Landa: SC has confirmed availability to meet on 10/28/05 -- at 4:00 pm |
| | Munich | | | Travel to Mexico scheduled for morning of 10/28/05. |