**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

|  |  |  |
|---|---|---|
| CITY OF PONTIAC GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated | ) ) ) ) ) ) | No. 5:12-cv-05162 SOH |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| WAL-MART STORES, INC., and MICHAEL T. DUKE, | ) ) ) |  |
| Defendants. | ) ) ) ) ) |  |

**DEFENDANT WAL-MART STORES, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION TO STRIKE THE AMENDED COMPLAINT AND**
**PRIVILEGED MATERIALS FROM THE RECORD**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................... 3

III.    ARGUMENT ............................................................................................... 7

      A.      THE COURT SHOULD STRIKE PLAINTIFF'S AMENDED
            COMPLAINT IN ITS ENTIRETY. ...................................................... 7

      B.      THE CONFIDENTIAL DOCUMENTS IMPROPERLY DISCLOSED
            BY PLAINTIFF ARE PRIVILEGED. .................................................. 8

      C.      WAL-MART HAS CONSISTENTLY AND REPEATEDLY
            ASSERTED PRIVILEGE OVER THE CONFIDENTIAL
            DOCUMENTS AT ISSUE. .................................................................. 10

            1.      Wal-Mart Has Asserted Privilege Over, And Objected To,
                  Plaintiff's Disclosure Of The Privileged Documents At Every
                  Turn. ............................................................................................ 11

            2.      Disclosure By Third Parties, Without Wal-Mart's Consent,
                  Does Not Waive Wal-Mart's Privilege Over The Documents. .............. 14

      D.      PLAINTIFF VIOLATED WAL-MART'S PROPERTY RIGHTS BY
            DISCLOSING THE CONTENTS OF, AND REFUSING TO
            RETURN, THE STOLEN DOCUMENTS. ........................................ 16

IV.     CONCLUSION ........................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcraft v. Conoco, Inc.*,
  218 F.3d 282 (4th Cir. 2000).................................................................................... 15

*Baker v. Gen. Motors Corp.*,
  209 F.3d 1051 (8th Cir. 2000).................................................................................... 9

*In re BankAmerica Corp. Sec. Litig.*,
  270 F.3d 639 (8th Cir. 2001).................................................................................... 9

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) .................................................................................... 14

*In re Berkley & Co.*,
  629 F.2d 548 (8th Cir. 1980).................................................................................... 10

*In re Bieter Co.*,
  16 F.3d 929 (8th Cir. 1994).................................................................................... 8

*Brown & Williamson Tobacco Corp. v. Williams*,
  62 F.3d 408 (D.C. Cir. 1995) .................................................................................... 15

*Carpenter v. United States*,
  484 U.S. 19 (1987) .................................................................................... 16

*Coburn Grp., LLC v. Whitecap Advisors LLC*,
  640 F. Supp. 2d 1032 (N.D. Ill. 2009) .................................................................. 12, 15

*Conant v. Karris*,
  520 N.E.2d 757 (Ill. App. Ct. 1987).................................................................................... 16

*In re Dayco Corp. Deriv. Sec. Litig.*,
  102 F.R.D. 468 (S.D. Ohio 1984) .................................................................................... 11

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  No. 3:09-CV-58, 2011 WL 4625760 (E.D. Va. Oct. 3, 2011) ........................................... 16

*E3 Biofuels, LLC v. Biothane, LLC*,
  No. 8:11-CV-44, 2011 WL 6740416 (D. Neb. Dec. 22, 2011)........................................... 13

*Foman v. Davis*,
  371 U.S. 178 (1962) .................................................................................... 7

*Forrester v. White*,
  484 U.S. 219 (1988) .................................................................................... 15

*Godwin v. Churchman*,
  305 Ark. 520 (1991) .................................................................................... 16

*In re Grand Jury Proceedings Involving Berkley & Co.*,
   466 F. Supp. 863 (D. Minn. 1979) ................................................................................. 13

*Gundacker v. Unisys Corp.*,
   151 F.3d 842 (8th Cir. 1998) ................................................................................... 9, 11

*Holland v. Walls*,
   3 Ark. App. 20 (1981) ....................................................................................... 16, 17

*Holt v. McCastlain*,
   357 Ark. 455 (2004) ......................................................................................... 10, 14

*Interfaith Hous. Del., Inc. v. Town of Georgetown*,
   841 F. Supp. 1393 (D. Del. 1994) ................................................................................. 10

*Kelly v. CSE Safeguard Ins. Co.*,
   No. 2:08-CV-88, 2011 WL 3494235 (D. Nev. Aug. 10, 2011) ......................................... 12

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) .................................................................................... 17

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
   104 F.R.D. 103 (S.D.N.Y. 1985) ................................................................................. 12

*McDaniel v. Novartis Pharms. Corp.*,
   No. 2:08-CV-02088, 2012 WL 32608 (W.D. Ark. Jan. 6, 2012) ....................................... 7

*McQuillan v. Mercedes-Benz Credit Corp.*,
   331 Ark. 242 (1998) ......................................................................................... 16, 17

*Monarch Fire Protection Dist. v. Freedom Consulting & Auditing Servs., Inc.*,
   No. 4:08-CV-01424, 2009 WL 2155158 (E.D. Mo. July 16, 2009) ................................... 11

*Moore-El v. Luebbers*,
   446 F.3d 890 (8th Cir. 2006) ...................................................................................... 7

*Morissette v. United States*,
   342 U.S. 246 (1952) ................................................................................................. 17

*N.Y. Times Co. v. United States*,
   403 U.S. 713 (1971) ................................................................................................. 14

*Plunkett-Jarrell Grocery Co. v. Terry*,
   222 Ark. 784 (1954) ................................................................................................. 17

*Procter & Gamble Co. v. Bankers Trust Co.*,
   78 F.3d 219 (6th Cir. 1996) ....................................................................................... 15

*Shukh v. Seagate Tech., LLC*,
   872 F. Supp. 2d 851 (D. Minn. 2012) .......................................................................... 13

*Sidney I. v. Focused Retail Prop. I, LLC*,
   274 F.R.D. 212 (N.D. Ill. 2011) ................................................................................. 12

*Smith v. Allstate Ins. Co.*,
   No. 3:11-CV-165, 2012 WL 5463099 (W.D. Pa. Nov. 8, 2012) ....................................... 13

*United States ex rel. Lee v. Fairview Health Sys.*,
    413 F.3d 748 (8th Cir. 2005)................................................................... 7, 9

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ............................................................. 9, 11

*United States v. Workman*,
    138 F.3d 1261 (8th Cir. 1998)................................................................... 11

*United States v. Yielding*,
    657 F.3d 688 (8th Cir. 2011)................................................................. 8, 9

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................... 8

## Constitutional Provision

U.S. Const. art. I, § 6, cl. 1.................................................................................. 15

## Rules

Ark. R. of Prof'l Conduct 3.4(c) ...................................................................... 11

E.D. & W.D. Ark. Local R. 7.2(g)...................................................................... 1

Fed. R. Civ. P. 26(b)(3)(B) ................................................................................ 9

Fed. R. Evid. 501 ............................................................................................... 8

Fed. R. Evid. 502(b) .................................................................................. 12, 14

## Other Authorities

6 James Wm. Moore et al., Moore's Federal Practice
    § 26.49[5][e] (3d ed.) .......................................................................... 14

Defendant Wal-Mart Stores, Inc. ("Wal-Mart" or the "Company") respectfully moves to strike from the record in this action (1) the entire Amended Complaint filed by Plaintiff City of Pontiac General Employees' Retirement System ("Plaintiff") on February 14, 2013, and (2) the privileged documents and any references to those documents that were included in Plaintiff's Opposition to Defendant Wal-Mart's Motion to Transfer Venue to the Western District of Arkansas, in Plaintiff's Declaration of Jason A. Forge (the "Forge Declaration"), and in the Amended Complaint.  Plaintiff expressed its intent to "stand" on its complaint and never sought leave from this Court to file the Amended Complaint; and, as Defendants have repeatedly explained to Plaintiff, the confidential documents at issue are privileged materials that Wal-Mart believes were stolen from Wal-Mart.  This Court should strike the Amended Complaint and the privileged documents (and all references to them) from the record, order the documents returned to Wal-Mart or destroyed, and order Plaintiff to refrain from any further use of the documents.[1]

## I.    **INTRODUCTION**

This case arises out of allegations published by *The New York Times* in an article describing a "bribery" scheme that allegedly occurred in Mexico prior to 2005.  Am. Compl. ¶¶ 4-8.  According to the article, certain Company officials at Wal-Mart's Mexican subsidiary, Wal-Mart de México, allegedly paid bribes to obtain permits for new stores in that country.  *Id.* Based on those allegations, Plaintiff filed this putative securities fraud class action in the Middle District of Tennessee.  The case was subsequently transferred to this Court.  *See* Order (Doc. 47).

---

[1] On March 4, 2013, Wal-Mart's counsel conferred with counsel for Plaintiff in good faith on the issues raised in this Motion, but the parties were not able to resolve these issues without the intervention of the Court.  *See* E.D. & W.D. Ark. Local R. 7.2(g).

At the outset, Plaintiff and Defendants filed a scheduling order, in which Plaintiff agreed that, if it was appointed Lead Plaintiff, it would either file a consolidated amended complaint or "stand on" its original complaint.  *See* Joint Initial Case Management Plan and Order (Doc. 33), at 7.  Months later, Plaintiff's counsel twice informed counsel for Defendants—and once advised this Court at the hearing appointing Plaintiff to Lead Plaintiff—that Plaintiff intended to "stand on" its initial complaint, choosing not to file an amended complaint.  *See* Ex. 1; Ex. 2 at 9.  Nevertheless, two months later, Plaintiff filed the Amended Complaint without seeking leave of this Court and contrary to its counsel's earlier representations to Defendants and to this Court.

In addition, when this case was still pending in Tennessee, Plaintiff opposed Wal-Mart's motion to transfer venue to this Court, citing to a declaration attaching confidential and privileged Wal-Mart documents pertaining to Wal-Mart's internal investigation of the Mexico allegations.  *See* Plaintiff's Opposition to Defendant Wal-Mart's Motion to Transfer Venue to the Western District of Arkansas (Doc. 39); Forge Declaration (Doc. 40).

After Plaintiff filed the Forge Declaration, Wal-Mart sent Plaintiff a letter explaining Wal-Mart's belief that the privileged documents were stolen from the Company by a former Wal-Mart employee, and demanding that Plaintiff strike the documents from the record and return them to Wal-Mart or destroy them.  *See* Ex. 3.  Before Plaintiff filed its Amended Complaint, Wal-Mart again admonished Plaintiff not to disclose any privileged Wal-Mart documents.  *See* Ex. 4.  Plaintiff ignored Wal-Mart's repeated requests, and now has expanded its reliance on those documents by citing, attaching and reproducing several of them in its Amended Complaint.  *See* Am. Compl. (Doc. 86), ¶ 32.  After this filing, Wal-Mart promptly delivered another letter to Plaintiff demanding the referenced documents be stricken from the

record and/or sealed, and that Plaintiff return the privileged documents to Wal-Mart or destroy them. *See* Ex. 5. And again, Plaintiff refused. *See* Ex. 6.

In light of Plaintiff's cavalier disregard of its own counsel's representations and of Wal-Mart's privileges, Wal-Mart asks this Court to strike the Amended Complaint in its entirety and the privileged documents (and all references to them) from the record. Wal-Mart further requests that this Court order Plaintiff to return the privileged documents to Wal-Mart, or destroy them, so that Wal-Mart may protect its privilege. Even though portions of the privileged materials at issue have been published, discussed, or quoted by *The New York Times*, such disclosure by the news media does not vitiate Wal-Mart's privilege over the documents, and does not give Plaintiff the right to ignore Wal-Mart's litigation privileges in its filings with this Court. The Federal Rules of Evidence—not the news media—determine whether a litigant's sensitive documents may be included in public court filings and relied upon by the federal courts. It was not within Plaintiff's authority to decide, on its own, and without approval from this Court, that Wal-Mart's privileged documents were no longer worthy of protection.

## II.  FACTUAL BACKGROUND

As Wal-Mart has explained to Plaintiff, Wal-Mart believes that Plaintiff obtained the privileged documents at issue here, either directly or indirectly, from Bruce Gabbard—a former Wal-Mart employee who worked within Wal-Mart's Global Security department. Ex. 3. In 2007, when Gabbard was terminated from Wal-Mart and departed the Company, he stole approximately one terabyte of electronic data from Wal-Mart, which included a large volume of email and electronic files. Wal-Mart brought suit against Gabbard in Arkansas state court and obtained a temporary restraining order, a permanent injunction, and various contempt orders, enjoining Gabbard from disclosing any of the stolen information and instructing him to return the data to Wal-Mart immediately. *See* Ex. 7. Gabbard disregarded the Arkansas court's orders.

After Gabbard moved to Oklahoma, Wal-Mart brought suit against him there, and is now taking

steps to take Gabbard's deposition.[2]

Plaintiff in this action filed the Forge Declaration on July 17, 2012, in the Middle District

of Tennessee—ostensibly in support of its opposition to Wal-Mart's motion to transfer venue to

the Western District of Arkansas, although none of the privileged documents had any bearing on

the venue issue.  The Forge Declaration attached ten privileged e-mail communications, which

were also referenced in Plaintiff's opposition to Wal-Mart's motion to transfer:

| | |
|---|---|
| Exhibit 3 | "E-mail string from Thomas Mars to Ken Senser re IMPORTANT: WALMEX Memo, dated October 15, 2005," which provides a legal opinion of Wal-Mart's outside counsel regarding the investigation. |
| Exhibit 6 | "E-mail string from Maritza Munich-Legal to Mike Duke, Craig Herkert, Tom Hyde-Executive, Thomas Mars, Lee Stucky, Michael Fung and Ken Senser with copies to Martin J. Weinstein and Daryl Kreml re WALMEX Real Estate Transaction, November 1, 2005," which provides a legal opinion of Wal-Mart's outside counsel regarding the investigation. |
| Exhibit 8 | "E-mail from Maritza Munich-Legal to Thomas Mars, Ken Senser and Michael Fung re Wal-Mart Work Plan_WalMex, dated November 2, 2005," which provides a legal opinion of Wal-Mart's outside counsel regarding the investigation. |
| Exhibit 10 | "E-mail string from Joe Lewis to Ken Senser with a copy to Joe Lewis re DAR-MEXICO-4, dated November 14, 2005," which discusses the investigation for purposes of seeking a legal opinion and preparing for potential litigation. |
| Exhibit 12 | "E-mail from Bob Ainley – AUDIT to Michael Fung, Joe Lewis, Maritza Munich-Legal and Ken Senser with copies to Ronald Halter, Julio Veira and Scott Draper re Meeting with Former Wal-Mart Associate, dated |

---

[2]  Some of the privileged documents at issue were first made public—either by reference or by publication—by *The New York Times* on April 21, 2012, in connection with its publication of the article that forms the basis for this lawsuit.

November 18, 2005," which seeks a legal opinion from counsel regarding the investigation.

| | |
|---|---|
| Exhibit 13 | "E-mail string from Tom Mars – Legal to Ken Senser and Joe Lewis with a copy to Lee Stucky re WALMEX: Examination of Real Estate Transactions, dated January 18, 2006," which provides the legal opinion of counsel regarding the investigation. |
| Exhibit 15 | "E-mail string from Tom Mars – Legal to Ken Senser re Mexico Project, dated February 8, 2006," which discusses documents being provided to counsel. |
| Exhibit 16 | "E-mail string from Alberto Mora – Legal to Ken Senser and Joe Lewis re Gestores/Report (Draft)/English version, dated March 22, 2006," which provides the legal opinion of counsel regarding the investigation. |
| Exhibit 17 | "E-mail from Joe Lewis to Alberto Mora – LEGAL and Ken Senser with a copy to Joe Lewis re Gestores/Report (Draft)/English version, dated March 25, 2006," which seeks a legal opinion of counsel regarding the investigation. |
| Exhibit 18 | "E-mail string from Joe Lewis to Ken Senser with a copy to Joe Lewis re Gestores, dated May 10, 2006," which discusses the legal opinion of counsel regarding the investigation. |

After Plaintiff filed the Forge Declaration, Wal-Mart sent a letter to Plaintiff's counsel asserting privilege over the attached documents, requesting that the privileged documents be stricken from the court record, and demanding the return or destruction of the privileged materials. *See* Ex. 3. Wal-Mart explained that the documents were "stolen from Wal-Mart by a former employee" and emphasized that "[u]nder no circumstances should these documents be disclosed in any public setting." *Id.* at 1-2. Plaintiff's counsel offered no alternative explanation of the source of the privileged documents. Without receiving a response from Plaintiff and in anticipation of Plaintiff's filing of its Amended Complaint, Defendants again wrote to Plaintiff, noting that if "the amended complaint references or attaches documents that contain or may

contain Wal-Mart's privileged or confidential information, Defendants insist that Plaintiff file any such amended complaint under seal."  Ex. 4 at 2 n.1.[3]

Instead of returning the documents to Wal-Mart, striking them from the record, or filing them under seal, Plaintiff deliberately published three of the privileged documents in its Amended Complaint filed on February 14, 2013, and made allegations based on the substance of the three privileged emails.  *See* Am. Compl. ¶ 32 (reproducing excerpts from exhibits 3, 13, and 18 to the Forge Declaration).  All three of those emails involve either privileged communications to or from Wal-Mart counsel or a discussion of legal opinions provided by Wal-Mart counsel.  Following the filing of the Amended Complaint, Wal-Mart notified Plaintiff that the documents incorporated into the Amended Complaint were privileged, objected to Plaintiff's inclusion of the privileged documents in the trial record, and again demanded that Plaintiff return or destroy the materials.  *See* Ex. 5.[4]

Because Plaintiff has refused to take any action to strike Wal-Mart's privileged documents from the record, and has not complied with Wal-Mart's demand that documents be returned or destroyed, Wal-Mart requests that this Court order the documents (and all references to them) stricken from the record and order Plaintiff to return or destroy the privileged documents in its possession.

---

[3] In related actions against Wal-Mart involving other plaintiffs who have obtained these privileged documents, Wal-Mart similarly has asserted its privilege and demanded return of the documents.  *See, e.g.*, Exs. 8-11.

[4] Two of the privileged documents at issue—exhibits 3 and 6 of the Forge Declaration—were also attached to a letter sent by Congressmen Elijah Cummings and Henry Waxman to Defendant Michael Duke on January 10, 2013.  *See* Am. Compl. ¶ 45 (describing and reproducing portion of letter).

III.   <u>ARGUMENT</u>

    A.    **THE COURT SHOULD STRIKE PLAINTIFF'S AMENDED COMPLAINT IN ITS ENTIRETY.**

As an initial matter, this Court should strike the Amended Complaint in its entirety because Plaintiff did not have this Court's permission to file it. The Eighth Circuit has recognized that "plaintiffs do not have an absolute or automatic right to amend." *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citation omitted). Accordingly, courts "may disallow amendment for various reasons, [ ] including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Moore-El v. Luebbers*, 446 F.3d 890, 901-02 (8th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, under the terms of the scheduling order entered in this action, Plaintiff had the option, after it was appointed Lead Plaintiff, of filing a consolidated amended complaint or "standing on" its original complaint. *See* Joint Initial Case Management Plan and Order (Doc. 33), at 7. On November 16, 2012, Plaintiff's counsel informed counsel for Defendants that Plaintiff intended to "stand on its complaint." Ex. 1.[5] On December 10, 2012—more than seven months after Plaintiff filed its complaint in this action—Plaintiff's counsel likewise advised the

---

[5] In the same letter, Plaintiff's counsel stated that "plaintiff reserves its right to file an amended complaint in the event that one appears necessary after the filing of defendants' motion to dismiss." *Id.* But Plaintiff did not have any such rights to reserve after agreeing to the Joint Initial Case Management Plan and Order. *See, e.g.*, *McDaniel v. Novartis Pharms. Corp.*, No. 2:08-CV-02088, 2012 WL 32608, at *3-4 (W.D. Ark. Jan. 6, 2012) ("violating the plain terms of . . . [a] case management order" is an independent "legal bas[is] upon which" to dismiss a case with prejudice).

Court during the hearing at which Plaintiff was appointed Lead Plaintiff (*see* Doc. 73) that, under the terms of the scheduling order, Plaintiff would "stand on" its initial complaint rather than file a consolidated amended complaint, "at least for the time being." *See* Ex. 2, at 9. Thus, based on the scheduling order in this action and Plaintiff's counsel's representations to the Court and to Defendants, this Court should disallow Plaintiff's Amended Complaint.[6]

### B.   THE CONFIDENTIAL DOCUMENTS IMPROPERLY DISCLOSED BY PLAINTIFF ARE PRIVILEGED.

The privileged nature of the documents at issue is apparent on their face, as they reflect confidential communications between and among Wal-Mart's counsel and investigators regarding the progress of Wal-Mart's internal investigation into alleged violations of both U.S. and Mexican laws. All of the communications either seek, provide, or discuss Wal-Mart counsel's legal advice, and many of them are accordingly marked "attorney-client privileged" or "attorney work product." These documents are clearly protected by both attorney-client privilege and the work-product doctrine.[7] The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), and "belongs to and exists solely for the benefit of the client." *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011) (citation omitted). The attorney-

---

[6] If the Court allows the Amended Complaint, it should nevertheless dismiss it for the reasons set forth in Defendants' Motion to Dismiss the Amended Complaint. *See* Defs.' Mot. to Dismiss Am. Compl. (Doc. 89).

[7] In cases like this one arising under federal law, Federal Rule of Evidence 501 provides that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege." Fed. R. Evid. 501. Accordingly, the "federal common law of attorney-client privilege" applies here. *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994).

client privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." *Yielding*, 657 F.3d at 707 (citation omitted). Its purpose is to "encourage[ ] full and frank communication between attorneys and their clients so that clients may obtain complete and accurate legal advice." *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641 (8th Cir. 2001). This Court applies the attorney-client privilege to communications between a client and an attorney when "the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort." *Lee v. Overbey*, No. 2:08-CV-02115, 2010 WL 161443, at *2 (W.D. Ark. Jan. 8, 2010) (internal quotation marks and citations omitted).

"[T]he work product privilege," on the other hand, "does not exist to protect a confidential relationship, but rather . . . to protect information against opposing parties." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980); *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 (8th Cir. 1998) (explaining that the work-product doctrine "operates to ensure that an opponent cannot secure materials that an adversary has prepared in anticipation of litigation"). Under the work-product doctrine, such materials are protected unless "the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (citations omitted). Further, "counsel's mental impressions, conclusions, opinions or legal theories" are entitled to "almost absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.*; *see also* Fed. R. Civ. P. 26(b)(3)(B).

9

The documents at issue here fall into one or both of two categories: Some of the documents are communications between Wal-Mart counsel and employees pertaining to Wal-Mart's internal investigation of the alleged events in Mexico, all of which are plainly privileged as attorney-client communications. Some of the documents constitute communications between Wal-Mart employees discussing counsel's mental impressions, conclusions, opinions, or legal theories about the investigation, all of which plainly constitute trial preparation materials protected by the work-product doctrine, including opinion work product. All of these confidential communications at issue were between and among Wal-Mart's representatives and counsel—both in-house counsel and outside counsel—for the purpose of facilitating legal services to Wal-Mart. Thus, all of the documents at issue are privileged.

### C.   WAL-MART HAS CONSISTENTLY AND REPEATEDLY ASSERTED PRIVILEGE OVER THE CONFIDENTIAL DOCUMENTS AT ISSUE.

Wal-Mart has never waived its privilege over the documents at issue. "It is a well-established rule of common law that confidential communications between an attorney and his client are privileged and not subject to compelled disclosure absent *consent* of the client." *In re Berkley & Co.*, 629 F.2d 548, 552 (8th Cir. 1980) (citation and footnote omitted; emphasis added); *see also Holt v. McCastlain*, 357 Ark. 455, 463 (2004) ("Inherent in the idea of waiver of privilege is the understanding that the client is *allowing* disclosure of something that was previously privileged as a confidential communication." (emphasis added)). Courts have thus held that privilege is not waived when a disclosure is not authorized by the privilege-holder company or its official representative, but rather made by a dissenting or renegade employee. *See, e.g.*, *Interfaith Hous. Del., Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1399 (D. Del. 1994) (holding that town council member's statement was not effective to waive the council's privilege where there was no evidence of his authority to waive privilege); *In re Dayco Corp.*

10

*Deriv. Sec. Litig.*, 102 F.R.D. 468, 469-70 (S.D. Ohio 1984) (finding attorney-client privilege protected document provided to newspaper by "an unidentified source").

Only "[v]oluntary disclosure of attorney client communications expressly waives the privilege." *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998) (citation omitted). Moreover, with respect to the "waiver of the work product privilege," even voluntary disclosure will "not suffice." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). Such a waiver occurs only "[i]n rare circumstances." *Gundacker*, 151 F.3d at 847; *see also Monarch Fire Protection Dist. v. Freedom Consulting & Auditing Servs., Inc.*, No. 4:08-CV-01424, 2009 WL 2155158, at *1 (E.D. Mo. July 16, 2009) ("The Eighth Circuit has not elaborated on what these circumstances may be . . . .  The disclosure of opinion work product to third parties does not, in and of itself, constitute a waiver of the privilege." (internal quotation marks and citation omitted)).

Wal-Mart has never voluntarily disclosed the documents at issue to Plaintiff, and has never authorized or consented to their public disclosure by Plaintiff or any other third parties.  To the contrary, Wal-Mart has done all that it reasonably can under the law to protect its privilege, and Plaintiff has an ethical obligation to respect that privilege unless and until it has obtained permission from this Court to use the documents.  *See, e.g.*, Ark. R. of Prof'l Conduct 3.4(c). Plaintiff has done neither.

### 1.     Wal-Mart Has Asserted Privilege Over, And Objected To, Plaintiff's Disclosure Of The Privileged Documents At Every Turn.

The privileged documents at issue were stolen from Wal-Mart, delivered to Plaintiff, and disclosed by Plaintiff to the public without Wal-Mart's consent and over Defendants' express objections.  Although the Constitution affords broad protections to newspapers and unique immunity to Congress for their dissemination of information to the public, the Federal Rules of

Evidence prohibit Plaintiff from introducing privileged materials on the open docket or affirmatively using them, as Plaintiff has done here in supporting its Amended Complaint.  The Federal Rules of Evidence governing waiver of privilege and the case law construing those rules establish that an unauthorized party's disclosure of privileged documents does not amount to waiver of the privilege.

Federal Rule of Evidence 502(b) provides that the disclosure of privileged materials, either by the privilege-holder or by a third party, "does not operate as a waiver in a federal or state proceeding if:  (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error . . . ."  Fed. R. Evid. 502(b).  Although "Rule 502 does not define 'inadvertent disclosure,'" courts have concluded that the requirement "poses a straightforward question of [the privilege-holder's] intent."  *Sidney I. v. Focused Retail Prop. I, LLC*, 274 F.R.D. 212, 216 (N.D. Ill. 2011); *see also Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009) (concluding that the "inadvertent" disclosure requirement "essentially ask[s] whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake"); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985) (contrasting disclosure that was "inadvertent and a mistake" with "a knowing waiver"); *Kelly v. CSE Safeguard Ins. Co.*, No. 2:08-CV-88, 2011 WL 3494235, at *2 (D. Nev. Aug. 10, 2011).

Whether the privilege-holder took "reasonable steps" to prevent the disclosure, as described in Rule 502, "must be judged against the care or negligence with which the privilege is guarded."  *Lois Sportswear*, 104 F.R.D. at 105 (cited by Fed. R. Evid. 502 Advisory Committee Notes (2011)).  Such reasonable steps therefore include, for example, "immediately br[inging]

the issue to the attention of [the opposing party's] counsel," *Smith v. Allstate Ins. Co.*, No. 3:11-CV-165, 2012 WL 5463099, at *3 (W.D. Pa. Nov. 8, 2012); "promptly objecting" to the opposing party's use in a responsive pleading of the information contained in the documents, *id.*; and "request[ing] the return of the disc with the inadvertently included material," *E3 Biofuels, LLC v. Biothane, LLC*, No. 8:11-CV-44, 2011 WL 6740416, at *3 (D. Neb. Dec. 22, 2011).

Here, within days after Plaintiff first attached the privileged documents at issue as exhibits to the Forge Declaration, Wal-Mart wrote a letter to Plaintiff, making clear that "[t]hese documents are protected by attorney-client privilege and the attorney work product doctrine" and affirming that "Wal-Mart has not authorized the disclosure of these documents to you and thus has not waived any of the privileges to which it is entitled." Ex. 3 at 1. When Wal-Mart learned that Plaintiff was considering filing an amended complaint, Wal-Mart further demanded that Plaintiff file any additional disclosures of the privileged documents under seal. Ex. 4 at 2 n.1. And, when Plaintiff filed its Amended Complaint, incorporating the privileged documents at issue, Wal-Mart again wrote a letter to Plaintiff, insisting that it "comply with Wal-Mart's demand for return of its privileged and confidential documents." Ex. 5 at 2. Thus, Wal-Mart has taken reasonable steps to prevent disclosure and to rectify Plaintiff's disclosure of the privileged documents. Wal-Mart was not required to take any further actions under Rule 502 in order to maintain its privilege over the documents at issue. *See Shukh v. Seagate Tech., LLC*, 872 F. Supp. 2d 851, 859 (D. Minn. 2012) ("[T]he Court [ ] agrees . . . that to the extent the documents can be seen as stolen, they should not lose the protection of privilege." (citation omitted)); *In re Grand Jury Proceedings Involving Berkley & Co*., 466 F. Supp. 863, 869 (D. Minn. 1979) (documents disclosed to the government by a former employee "should not lose their privileged status simply because of the manner in which they were disclosed"), *aff'd*, 629 F.2d 548 (8th Cir.

1980);  6 James Wm. Moore et al., Moore's Federal Practice § 26.49[5][e], at 26-379 (3d ed.) ("[T]he attorney-client privilege is not waived through public disclosure of a stolen privileged document."); *see also Holt*, 357 Ark. at 463 ("[The client and his attorney] have consistently claimed attorney-client privilege on behalf of [the client], so the privilege has never been waived.").

### 2.  Disclosure By Third Parties, Without Wal-Mart's Consent, Does Not Waive Wal-Mart's Privilege Over The Documents.

Wal-Mart's assertion of privilege is also unaffected by the publication of the documents by *The New York Times* and Congress.  Like Plaintiff's filing of the privileged documents, these third-party disclosures do not operate as a waiver because the privileged documents were not provided by Wal-Mart and because Wal-Mart never consented to their disclosure.  Further, after the disclosures by *The New York Times* and Congress, Wal-Mart properly determined that there were no "reasonable steps" available to "rectify" those disclosures.  Fed. R. Evid. 502(b).

*The New York Times* and Congress published Wal-Mart's confidential information without Wal-Mart's consent, but such intentional acts by unauthorized parties do not constitute a waiver of privilege under Rule 502.  In light of the broad constitutional protections afforded to news reporters and the media—protections that are not afforded by the Federal Rules of Evidence to private parties in litigation—it would have been futile for Wal-Mart to take any action against *The New York Times* for its disclosure of Wal-Mart's privileged documents.  *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 527-28, 535 (2001) (protecting the media's First Amendment right to publish documents obtained from a source who obtained the documents unlawfully); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (upholding newspaper's right to publish sensitive information stolen from a third party, even where the Government claimed that publication would "endanger the national security"); *id.* at 718 (Black,

14

J., concurring); *see also Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 287 (4th Cir. 2000) (protecting a reporter's First Amendment right to publish confidential settlement information); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) (upholding a magazine's First Amendment right to publish sealed court documents).  Similarly, Wal-Mart could not take any reasonable action against Congress for its disclosure of Wal-Mart's confidential documents because such efforts also would have been futile in light of the unique constitutional immunity afforded members of Congress.  *See* U.S. Const. art. I, § 6, cl. 1 (Speech or Debate Clause); *Forrester v. White*, 484 U.S. 219, 224 (1988) ("absolute official immunity" under the Speech or Debate Clause); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 421 (D.C. Cir. 1995) (upholding the right of Congress under the Speech or Debate Clause to prevent a company from inspecting its own confidential documents that had "come[] into the hands of congressmen").

At the same time, Wal-Mart did take reasonable steps to prevent the disclosure of the documents to third parties and to reclaim the stolen documents themselves.  As soon as Wal-Mart learned that its documents had been stolen by Bruce Gabbard, Wal-Mart filed suit against Gabbard seeking immediate return of the information to prevent its disclosure.  Wal-Mart successfully obtained a temporary restraining order, a permanent injunction, and two contempt orders to that effect.  Wal-Mart has continued to pursue Gabbard, even filing suit against him in a second state, in order to obtain the confidential data that he stole from Wal-Mart, and to prevent any further disclosure.  Thus, Wal-Mart has maintained its privilege over the documents at issue.  *See, e.g.*, *Coburn Grp.*, 640 F. Supp. 2d at 1040 ("The standard of Rule 502(b)(2) is not 'all reasonable means,' it is 'reasonable steps to prevent disclosure.'").

15

**D.  PLAINTIFF VIOLATED WAL-MART'S PROPERTY RIGHTS BY DISCLOSING THE CONTENTS OF, AND REFUSING TO RETURN, THE STOLEN DOCUMENTS.**

Even though Wal-Mart has repeatedly asserted privilege over the stolen confidential documents and demanded their return, Plaintiff—who has no legal right to possess the documents—continues to retain the documents and has repeatedly disclosed their contents to the public.  Plaintiff's acts constitute unlawful conversion of Wal-Mart's property, another reason this Court should demand that Plaintiff return the documents to Wal-Mart.

Under Arkansas law, conversion is the wrongful commission of "a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owners' rights."  *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 247 (1998) (citation omitted). "Confidential business information has long been recognized as property."  *Carpenter v. United States*, 484 U.S. 19, 26 (1987) (citations omitted).  Thus, even when such information is copied before being misused, courts have upheld conversion claims if the rightful owner of the information has been deprived of the benefit of the information's confidentiality.  *See, e.g.*, *Godwin v. Churchman*, 305 Ark. 520, 529 (1991) (Plaintiffs stated a claim for conversion where they alleged, among other things, that Defendants "copied the computer diskettes which were the property of Plaintiffs," and thereby "exercised dominion over property"); *Holland v. Walls*, 3 Ark. App. 20, 24 (1981) ("duplicates" constitute "tangible property rights" subject to conversion); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09-CV-58, 2011 WL 4625760, at *6 (E.D. Va. Oct. 3, 2011) (confidential business information contained in copies of a document can support a conversion claim despite the fact that plaintiff retained the original document); *Conant v. Karris*, 520 N.E.2d 757, 763 (Ill. App. Ct. 1987) (continued possession of a copy of a computer printout containing plaintiff's confidential business information constituted conversion because the plaintiff was deprived of the benefit of the document's confidentiality).

16

This is because the "value" of the copied documents "derives chiefly from . . . their contents being concealed from the public." *Holland*, 3 Ark. App. at 24.

Further, the electronic nature of the documents at issue does not affect Plaintiff's liability for conversion. *See Kremen v. Cohen*, 337 F.3d 1024, 1034 (9th Cir. 2003) ("It would be a curious jurisprudence that turned on the existence of a *paper* document rather than an electronic one.  Torching a company's file room would then be conversion while hacking into its mainframe and deleting its data would not.").  Arkansas courts have long recognized that "*[a]nything* which is the subject of property, and is of a personal nature, is the subject of conversion."  *Plunkett-Jarrell Grocery Co. v. Terry*, 222 Ark. 784, 792 (1954) (internal quotation marks and citation omitted; emphasis added).

Here, Plaintiff has wrongfully retained and exposed to the public the contents of Wal-Mart's privileged documents, an act that is inconsistent with Wal-Mart's right to keep such privileged information confidential.  Plaintiff committed "a distinct act of dominion," *McQuillan*, 331 Ark. at 247, over documents that Plaintiff knew constituted Wal-Mart's property.  Even if Plaintiff was not responsible for the initial theft of the documents at issue, that does not relieve Plaintiff of its responsibility to return the documents or alleviate Plaintiff's liability for conversion.  As the Supreme Court has recognized, conversion "may include misuse or abuse of property" and "may be consummated . . . without any wrongful taking, where the initial possession by the converter was entirely lawful."  *Morissette v. United States,* 342 U.S. 246, 271-72 (1952).  Accordingly, Plaintiff has wrongfully converted Wal-Mart's confidential business information—another reason this Court should require Plaintiff to return the privileged documents and strike them (and all references to them) from the record.

*      *      *

Plaintiff's strategy in this case has been to file first and answer questions later. That is not an appropriate way to handle an opposing party's privileged documents, and this Court should not tolerate Plaintiff's behavior. Plaintiff had no right to amend its complaint, and no right to file Wal-Mart's privileged documents—repeatedly—in the public court record. Where, as here, privileged documents have been released without the privilege-holder's permission into the public domain, courts have an obligation to protect the party's litigation privileges, exclude the documents from the public court record, and prevent another party from filing and relying on those documents. This Court should therefore strike the Amended Complaint in its entirety from the record, and grant Wal-Mart's reasonable request for protection over its privileged communications by ordering that the documents at issue (and all references to those documents) be stricken from the record and that Plaintiff return the documents to Wal-Mart or destroy them.

## IV.   CONCLUSION

For the foregoing reasons, Wal-Mart respectfully request that this Court strike from the record the Amended Complaint in its entirety; strike Wal-Mart's privileged documents and any references to those documents contained in Plaintiff's Opposition to Wal-Mart's Motion to Transfer Venue to the Western District of Arkansas, in the Forge Declaration, or in the Amended Complaint; order Plaintiff to return or destroy Wal-Mart's privileged materials; and order Plaintiff to refrain from any further use of the privileged documents.

DATED:  March 7, 2013                    Respectfully submitted,


                                         /s/ Jess Askew III
THEODORE J. BOUTROUS JR.                 JESS ASKEW III (Ark. Bar No. 86005)
JONATHAN C. DICKEY                       jaskew@williamsanderson.com
MARK A. PERRY                            TERESA WINELAND (Ark. Bar No. 81168)
GEORGE H. BROWN                          twineland@williamsanderson.com
BRIAN M. LUTZ                            WILLIAMS & ANDERSON PLC
GIBSON DUNN & CRUTCHER LLP               111 CENTER STREET, STE. 2200
333 SOUTH GRAND AVENUE                   LITTLE ROCK, AR 72201
LOS ANGELES, CA 90071-3197               TELEPHONE: (501) 372-0800
TELEPHONE:  (213) 229-7000               FAX: (501) 372-6453
FAX: (213) 229-7520

        *Counsel for Wal-Mart Stores, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of March 2013, I electronically filed the foregoing with the Clerk of Court using the Electronic Case Filing system, which will send notification of such filing to the following:

**BARRETT JOHNSTON, LLC**
George E. Barrett
Douglas S. Johnston, Jr.
Timothy K. Miles
217 Second Avenue, North
Nashville, TN 37201-1601
Tel: 615-244-2202
Fax: 615-252-3798

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins
David C. Walton
Jason A. Forge
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: 619-231-1058
Fax: 619-231-7423

**SULLIVAN, WARD, ASHER & PATTON, P.C.**
Cynthia J. Billings
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Tel: 248-746-0700
Fax: 248-746-2760

**PATTON, TIDWELL & SCHROEDER, L.L.P.**
Nicholas H. Patton
4605 Texas Boulevard
P.O. Box 5398
Texarkana, TX 75505-5398
Tel:  (903) 792-7080
Fax:  (903) 792-8233

*Counsel for Plaintiff*

*/s/ Jess Askew III*
Jess Askew III