UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| CITY OF PONTIAC GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC., et al.,<br><br>Defendants. | No. 5:12-cv-05162-SOH<br><br><u>CLASS ACTION</u> |

STIPULATED ORDER ESTABLISHING PROTOCOL FOR PRODUCTION OF DOCUMENTS

I.  **SCOPE**

A.  The general procedures and protocols outlined herein govern the search for, review and production of documents, including ESI (as defined below), by a party during the pendency of this litigation.

B.  As used in this order, the terms "ESI" or "Electronically Stored Information" mean "[a]s referenced in the United States Federal Rules of Civil Procedure, information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy." The Sedona Conference Glossary.

II. **IDENTIFICATION OF RESPONSIVE DOCUMENTS**

Documents and ESI which are neither privileged nor otherwise protected shall be timely reviewed and produced in accordance with this Order. After receiving requests for production of documents, the party making the production (the "Producing Party") shall conduct a reasonable and good faith search for responsive documents.

A.  **Preservation**

Consistent with the parties' obligations under Rule 26(f)(2) and the parties' Joint Report pursuant to Fed. R. Civ. P. 26(f) and Local Rule 26.1 (Dkt. No. 171), both parties have taken reasonable measures to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise.

B.  **Sources**

1.  The parties will meet and confer regarding the custodial and non-custodial data sources likely to contain responsive information, including ESI. The parties agree to disclose document retention policies or practices (*e.g.*, retention schedules or policies,

- 1 -

auto-delete functions, mailbox size limits, advanced analytics) that are likely to impact the current existence or location of responsive documents or ESI that existed during the relevant time period. The parties shall identify custodians whose files are likely to contain documents relating to the subject matter of this litigation along with a description of the proposed custodians' job title, brief description of job responsibilities, and dates of employment. Disclosures should be made to permit the other side a reasonable opportunity to request changes and, if necessary, raise concerns with the Court.

2. The parties will meet and confer regarding the sources likely to contain responsive ESI that are not reasonably accessible because of undue burden or cost under Fed. R. Civ. P. 26(b)(2)(B).

C. **Search and Review Methodology**

1. The parties will disclose, and attempt in good faith to come to an agreement on, search and culling methods that will be used to identify responsive information. The parties will disclose any proposed limitations on the scope of discovery including custodians, custodial and non-custodial sources to be searched, the date ranges, file types, or any additional proposed method to cull documents for review, *e.g.*, search terms.

2. The parties will disclose their intent to use predictive coding/technology-assisted-review ("TAR") for the purpose of culling documents to be reviewed or identifying potentially responsive documents. If a party decides to implement TAR software as part of its review, the parties will confer on an appropriate protocol for its use. If agreement cannot be reached on an appropriate protocol, the issue will be raised with the Court.

## III. PRODUCTION OF HARD COPY DOCUMENTS

Hardcopy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains color and is not produced in color, and color is necessary to understand the meaning or content of the document, reasonable requests for the production of specific documents as 300 DPI, color JPG images will not be denied. Multi-page Optical Character Recognition ("OCR") text for each document should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV. PRODUCTION OF ESI

A. ESI should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of audio, video, slideshow presentation-type files including, but not limited to, Microsoft Power Point, and spreadsheet-type files including, but not limited to, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in

Table 1, attached hereto, if they are reasonably ascertainable. An .opt image cross-reference file should also be provided for all TIFF images.

B. TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. If an original document contains color and is not produced in color, and color is necessary to understand the meaning or content of the document, reasonable requests for the production of specific documents as 300 DPI, color JPG images will not be denied.

C. If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing text stating the document has been produced in native format should also be provided. If documents that the parties have agreed to produce in native format need to be redacted and the documents are not produced in a reasonably usable form, the receiving party may make reasonable requests for certain documents to be re-produced in a way that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this Order or to the extent records do not easily conform to native or TIFF format (*e.g.*, structured data), the Producing Party shall identify such classes of documents, and reasonable requests for an exception to this Order will not be denied to ensure such documents are produced in a reasonably usable format.

D.      Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An e-mail that includes content in the BCC or other blind copy field should not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate documents is not acceptable. De-duplication should be done across the entire collection (*i.e.*, global level) and the CUSTODIAN_ALL field should list each custodian, separated by a semicolon, who was a source of that document. To accommodate for rolling productions, for ESI that is removed as duplicate from earlier productions, the producing party should provide an overlay file every 3 to 5 weeks after the producing party's initial production that includes the duplicate custodian names.

E.      Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced. The parties shall meet and confer on any additional file types that may also need not be processed, reviewed, or produced.

F.      The Producing Party shall produce documents on CD-ROM, DVD, external hard drive (with standard PC compatible interface), File Transfer Protocol (for document production under 10GB), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall be labeled with: (1) the party making the production; (2) the date of the

production; (3) text referencing that it was produced in *City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc., et al.*, No. 5:12-cv-05162-SOH; (4) the Bates number range of the materials contained on the Production Media; and (5) any confidentiality designation(s) consistent with the terms of any protective order entered in this matter. To maximize security of information in transit, any Production Media should be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

## V. MISCELLANEOUS PROVISIONS

A. If the forms of production allowed by this Order present an undue burden or cost for a Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may file a motion with the Court to seek individual relief from this Order.

B. Nothing in this Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any documents or data are preserved and may be asserted at the appropriate time. The parties may agree to modify or waive the terms of this Order in writing signed by counsel for the affected parties.

IT IS SO STIPULATED:

DATED: November 17, 2015

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
DEBRA J. WYMAN
LAURA M. ANDRACCHIO
AUSTIN P. BRANE
MICHAEL ALBERT


        /s/ Austin P. Brane
        AUSTIN P. BRANE

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

PATTON TIDWELL & CULBERTSON, LLP
NICHOLAS H. PATTON
GEOFFREY P. CULBERTSON
2800 Texas Blvd.
Texarkana, TX 75503
Telephone: 903/792-7080
903/792-8233 (fax)
nickpatton@texarkanalaw.com
gpc@texarkanalaw.com

Liaison Counsel

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)

Additional Counsel for Plaintiff

- 7 -

DATED: November 17, 2015       JESS ASKEW III (Ark. Bar No. 86005)
                               TERESA WINELAND (Ark. Bar No. 81168)
                               KUTAK ROCK LLP


                               _____/s/ Jess Askew III_____
                                      JESS ASKEW III

                               124 West Capitol Avenue
                               Suite 2000
                               Little Rock, AR 72201
                               Telephone: 501/975-3000
                               501/975-3001 (fax)
                               jess.askew@kutakrock.com
                               teresa.wineland@kutakrock.com

                               PETER A. WALD
                               BRIAN T. GLENNON
                               COLLEEN C. SMITH
                               SARAH A. GREENFIELD
                               NICHOLAS J. SICILIANO
                               ANDREW R. GRAY
                               MARCY C. PRIEDEMAN
                               LATHAM AND WATKINS LLP
                               505 Montgomery Street, Suite 2000
                               San Francisco, CA 94111-6538
                               Telephone: 415/391-0600
                               415/395-8095 (fax)

                               Attorneys for Defendants Wal-Mart Stores, Inc.
                               and Michael T. Duke

                     *     *     *

IT IS SO ORDERED.


DATED: __5/19/16__          _____Susan O. Hickey_____
                            THE HONORABLE SUSAN O. HICKEY
                            UNITED STATES DISTRICT JUDGE

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

MAY 19 2016

DOUGLAS F. YOUNG, Clerk
By
   Deputy Clerk

## Table 1

| Field Name | Example/Format | Description |
|---|---|---|
| BEGDOC | ABC0000001 (Unique ID) | The BEGDOC field contains the unique sequential BATES number of the first page of the document. |
| ENDDOC | ABC0000003 (Unique ID) | The ENDDOC field contains the unique sequential BATES number of the last page of the document. |
| BEGATT | ABC0000001 (Unique ID Parent-Chile Relationships) | BEGATT is used for Emails/attachments. BEGATT is the BEGDOC for the parent Email of each attachment. This field is populated for each attachment as well as the parent Email. |
| ENDATT | ABC0000008 (Unique ID Parent-Chile Relationships) | ENDATT is used for Emails/attachments. ENDATT is the sequential Bates number of the last page of the last attachment to the parent Email. This field is populated for each attachment as well as the parent Email. |
| DOCTYPE | Options: E-Mail, Attachment, E-Doc, or Hardcopy | Populate with the type of document: E-Mail, Attachment, E-Doc, or Hardcopy. Note that embedded messages should by populated as Attachment; only the parent e-mail is populated as E-Mail. |
| DATESENT | MM/DD/YYYY | The date the email was sent. |
| TIMESENT | HH:MM | The time the email was sent. |
| DATECREATED | MM/DD/YYYY | The date the document was created. |
| TIMECREATED | HH:MM | The time the email was created. |
| DATELASTMOD | MM/DD/YYYY | The date the document was last modified. |
| TIMELASTMOD | HH:MM | The time the document was last modified. |
| FILE_PATH | i.e. /JSMITH.pst/Inbox /Jsmith.pst/Deleted Items /Network Share/Accounting/... /JSmithPC/Users/jsmith/My documents/... | Original file path of a native document showing where the document was kept in the "ordinary course of business." |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata |
| FROM | Joe Smith | Email "From" data. |
| TO | Joe Smith | Email "To" data. |
| CC | Joe Smith | Email "CC" data. |
| BCC | Joe Smith | Email "BCC" data. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN_ALL | Joe Smith | Owner of data, if available. |
| DOC_EXT | xls | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| CONVER_INDEX | | ID used to tie together e-mail threads. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |