IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CITY OF PONTIAC GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated — PLAINTIFF

v. — CASE NO. 5:12-cv-5162

WAL-MART STORES, INC., and MICHAEL T. DUKE — DEFENDANTS

**ORDER**

Before the Court is Plaintiff's Motion for Class Certification. (ECF No. 229). Defendants have filed a Response. (ECF No. 244). Plaintiff has filed a Reply. (ECF No. 252). Defendants have filed an Amended Sur-Reply (ECF No. 274), and Plaintiff has filed a Response to the Amended Sur-Reply. (ECF No. 277). The Court finds this matter ripe for consideration.

## I. BACKGROUND

Plaintiff alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 10b-5 by (1) making materially false and misleading statements and (2) failing to disclose material adverse facts known to Defendants that would have made the statements made by them not misleading.[1] Plaintiff alleges that statements in a Report on Defendants' Form 10-Q filed with the SEC on

[1] Section 10(b) of the Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78(j)(b). "SEC Rule 10b-5 implements [§ 10(b)] by making it unlawful to, among other things, 'make any untrue statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 36 (2011) (quoting 17 C.F.R. § 240.10b-5(b)). Section 20(a) of the Act imposes secondary liability on every person "who, directly or indirectly, controls any person liable under any provision of this chapter or any rule or regulation thereunder." 15 U.S.C. § 78t(a).

December 8, 2011, artificially inflated and maintained Wal-Mart's publicly traded stock price until the alleged misstatements were disclosed by an article published in the *New York Times* on April 20, 2012. Plaintiff moves the Court to certify its claims relating to the alleged misstatements made on Form 10-Q.

On December 8, 2011, Defendants filed with the SEC a Report on Form 10-Q that stated the following:

> During fiscal 2012, the Company began conducting a voluntary internal review of its policies, procedures and internal controls pertaining to its global anti-corruption compliance program. As a result of information obtained during that review and from other sources, the Company has begun an internal investigation into whether certain matters, including permitting, licensing and inspections, were in compliance with the U.S. Foreign Corrupt Practices Act. The Company has engaged outside counsel and other advisors to assist in the review of these matters and has implemented, and is continuing to implement, appropriate remedial measures. The Company has voluntarily disclosed its internal investigation to the U.S. Department of Justice and the Securities and Exchange Commission. We cannot reasonably estimate the potential liability, if any, related to these measures. However, based on the facts currently known, we do not believe that these matters will have a material adverse effect on our business, financial condition, results of operations or cash flows.

On April 21, 2012, the *New York Times* published an article describing how Wal-Mart de Mexico, Wal-Mart's largest subsidiary, orchestrated a bribery scheme to obtain building permits throughout Mexico. The article reported that in 2005, Wal-Mart investigators discovered evidence of widespread bribery. It was further reported that Defendants covered up the suspected bribery scheme by rejecting an outside firm's proposed independent internal investigation and then assigning the investigation to the office implicated in the suspected bribery scheme, Wal-Mart de Mexico's General Counsel's Office. According to the newspaper article, Wal-Mart closed its investigation in 2006.

Plaintiff alleges that Defendants learned that the *New York Times* was investigating the suspected bribery scheme in late 2011. Plaintiff further alleges that, upon learning of the *New York*

*Times* investigation, Defendants filed a Form 10-Q that was designed to deceive the investing public about (1) the timing of, and circumstances leading to, their awareness of the suspected bribery scheme; (2) their response to the alleged bribery scheme; and (3) the possibility that the *New York Times* would soon reveal facts regarding the alleged bribery scheme that Defendants had concealed for years. According to Plaintiff, some of the differences between what Defendants represented and what they omitted are as follows: (1) Defendants actually learned about the alleged bribery scheme in 2005, not 2011; (2) Defendants learned about the alleged bribery scheme from a former in-house attorney and not from a voluntary internal review; (3) Defendants began an illegitimate internal investigation into the alleged bribery scheme in 2006, not 2011; (4) Defendants did not implement any remedial measures until at least 2011 despite having learned of the alleged bribery scheme in 2005; (5) Defendants closed their inquiry into the alleged bribery scheme in 2006 after rejecting a proposal from outside counsel to assist in the internal investigation; and (6) Defendants withheld all information about the alleged bribery scheme from the DOJ and the SEC from 2005-2011. Generally, Plaintiff alleges that Defendants' Form 10-Q contained statements that gave investors the false impression that they did not need to fear that Defendants had covered up the alleged bribery scheme.

Plaintiff asserts that the omitted and/or misleading information in the Form 10-Q concealed Wal-Mart's true worth and thus Wal-Mart was overvalued throughout the class period, which is defined as December 8, 2011, the date Wal-Mart filed its Form 10-Q, to April 20, 2012, the day before the *New York Times* article was published.[2] According to Plaintiff, after the *New York Times* article was published, the market recognized Wal-Mart's lower value and promptly removed the artificial inflation from its share price, which fell nearly 10% over the three days that

[2] Plaintiff alleges that Wal-Mart was facing billions of dollars in estimated expenses and losses, including penalties of over $2 billion, $1.3 billion in decreased growth, and investigation and legal fees of $2.76 billion.

followed the *Times* investigation.[3] Plaintiff alleges that weeks later Wal-Mart's stock price increased due to a quarterly performance surprise, but investors never recovered what they had paid for Wal-Mart's stock during the class period.

Plaintiff moves the Court for an order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following proposed class of investors:

> All persons or entities who purchased or otherwise acquired the publicly traded common stock of Wal-Mart Stores, Inc. ("Walmart") between December 8, 2011 and April 20, 2012 (the "Class Period"), and who were damaged by defendants' alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934. Excluded from the Class are defendants and Duke's family, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

(ECF No. 229). Plaintiff further moves the Court to appoint Plaintiff as class representative and appoint the law firm of Robbins Geller Rudman & Dowd LLP as class counsel and the law firm of Patton Tidwell & Culbertson as liaison counsel.

## II. DISCUSSION

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. The decision whether to certify a class action is within the broad discretion of the district court. *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430,436 (8th Cir. 1999). In determining whether to certify a class action, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal citations omitted). The plaintiff moving for class certification has the burden of showing that the Rule 23 requirements are met. *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994). "To be certified as a class, plaintiffs must meet all of the

[3] Wal-Mart's share price had modestly risen after December 8, 2011, to close at $62.45 on April 20, 2012. On April 23, 2012, the first trading day after the publication of the *New York Times* article, Wal-Mart's stock price fell $2.91 per share to close at $59.54 per share. The stock continued to drop on April 24, 2012, to close at $57.77 per share on volume of 30 million shares, and fell to $57.36 on April 25, 2012, on volume of 28 million shares.

requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005).

**A. Rule 23(a)**

The Rule 23(a) requirements are met if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements for class certification under Rule 23(a) are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). The only disputed Rule 23(a) factor in this case is typicality.

**1. Numerosity**

The first prerequisite to class certification under Rule 23(a), commonly referred to as the numerosity requirement, is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There are "[n]o arbitrary rules regarding the necessary size of classes." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982). Instead, the court considers numerous factors to determine whether numerosity is satisfied. *Id*. The number of persons in the proposed class is the "most obvious" factor in this determination. *Id*. In addition, the court may consider other factors in its inquiry such as "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Id*. at 559-60.

In the present case, it is undisputed that the numerosity requirement has been satisfied. Plaintiff seeks to certify a class that includes all persons or entities that purchased Wal-Mart stock during the proposed class period. Plaintiff has established that Wal-Mart had over three billion

shares of outstanding stock during this period. Plaintiff has also established that these shares were owned by thousands of persons and were traded on the New York Stock Exchange. The numerosity requirement is generally satisfied in class actions involving nationally traded securities. *In re SciMed Sec. Litig.*, No. 3-91-575, 1993 WL 616692, at *3 (D. Minn. Sept. 29, 1993). Accordingly, the Court concludes that joinder of all the proposed class members is impracticable and thus the numerosity requirement under Rule 23(a)(1) has been satisfied.

**2. Commonality**

The second prerequisite under Rule 23(a) is the commonality requirement. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). It is not required that every question of law or fact be common to every member of the class. *Paxton*, 688 F.2d at 561. "Rather, it may be satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (quoting *Am. Fin. Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)).

Plaintiff's satisfaction of the commonality requirement is also undisputed. The Court finds that members of the proposed class share issues in the case that involve identical claims and common evidence, including: (1) whether Defendants engaged in a scheme to defraud; (2) whether Defendants knowingly or recklessly made material misrepresentations or omitted material information in their public statements; (3) whether the price of Wal-Mart common stock artificially inflated during the class period; and (4) the extent of damages sustained by Class members and the appropriate measure of damages. (ECF No. 230, p. 9). Therefore, the Court concludes that the commonality requirement under Rule 23(a)(2) is satisfied.

**3. Typicality**

The third perquisite of Rule 23(a) is the typicality requirement. To meet this prerequisite, the claims or defenses of the representative parties must be typical of the claims or defenses of the proposed class. Fed. R. Civ. P. 23(a)(3). Typicality requires a showing "'that there are other members of the class who have the same or similar grievances as the plaintiff.'" *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). Factual variations amongst plaintiffs will not preclude class certification "if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir. 1996). In the context of securities fraud class actions, typicality is found when "named [p]laintiffs allege that they and all investors were damaged by the alleged scheme to mislead investors." *Minn. Firefighters' Relief Ass'n v. Medtronic, Inc.*, 278 F.R.D. 454, 457 (D. Minn. 2011).

To have claims typical of a class, named plaintiffs must have standing to pursue the relief sought. *In Re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999). To have standing, as required by Article III of the Constitution, there must be "injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Defendants argue that Plaintiff's claims are not typical of the class because it lacks standing to bring the suit. Defendants contend that Plaintiff lacks standing because it suffered no loss on its trades in Wal-Mart stock. Thus, according to Defendants, Plaintiff has not suffered an injury in fact. Defendants also argue that Plaintiff's purported lack of losses subjects it to unique defenses not affecting absent class members.

Defendants argue that Plaintiff's own bank statements reflect gains on every one of

Plaintiff's Wal-Mart stock sales during 2011 and 2012, and thus Plaintiff suffered no loss on these sales. These period bank statements, however, do not calculate losses or gains on class period purchases, which is the relevant inquiry here. Instead, the bank statements calculate gains and losses on all Wal-Mart shares Plaintiff bought and sold, including pre-class period holdings. Plaintiff has filed a memorandum in which it demonstrates that, under the "last-in-first-out" ("LIFO") methodology, it suffered losses on Wal-Mart stock sales during the class period.

In an argument relegated to a footnote, Defendants assert that the "LIFO method does not apply here" and thus the Court should employ the "first-in-first-out" ("FIFO") methodology to measure Plaintiff's losses. "In the context of a securities class action, FIFO and LIFO refer to methods used for matching purchases and sales of stock during the class period in order to measure a class member's damages." *Ellenburg v. JA Solar Holdings Co., Ltd.*, 262 F.R.D. 262, 265 (S.D.N.Y. 2009) (citing *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575, 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006)). "Under FIFO, stocks acquired first are assumed to have been sold first in the calculation of losses; under LIFO, stocks acquired most recently are assumed to have been the first sold."[4] *Bo Young Cha v. Kinross Gold Corp.*, 12 Civ. 1203, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012).

Each party in this case endorses the methodology that enhances its respective position regarding loss measurement. It is undisputed that, using a LIFO calculation, Plaintiff can show that it suffered damages as defined by 15 U.S.C. §78u-4(e)(2). It is also undisputed that, using a FIFO calculation, Plaintiff cannot show that it suffered damages as defined by the statute. Both the LIFO

---

[4] "Under FIFO, a plaintiff's sales of defendant's shares during the class period are matched first against any pre-existing holdings of shares." *Johnson v. Dana Corp.*, 236 F.R.D. 349, 352 (N.D. Ohio 2006). "The net gains or losses from those transactions are excluded from damage calculations." *Id.* "[U]nder LIFO, a plaintiff's sales of defendant's share[s] during the class period are matched first against the plaintiff's most recent purchase of defendant's shares and gains or losses from those transactions are considered in damage calculations." *Id*.

and FIFO methods have been accepted by Courts for assessing class period damages and for appointing lead plaintiffs.

Defendants in the present case conclusively state that the LIFO method does not apply. Defendants, however, do not provide any reason as to why the FIFO method is preferable in this case. In fact, several courts have expressed that the current majority view is that securities fraud losses should be calculated using LIFO. *E.g.*, *Khunt v. Alibaba Group Holding, Ltd.*, Nos. 15 Civ. 00759, 15 Civ. 00811, 15 Civ. 00991, 15 Civ. 010405, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("[M]ore recently, courts have preferred LIFO and have generally rejected FIFO as an appropriate means of calculated losses in securities fraud cases."); *In re K-V Pharmaceutical Co. Sec. Litig.*, 11 CV 01816, 2012 WL 1570118, at *4 (E.D. Mo. May 3, 2012) (The LIFO methodology is "most accepted by courts."); *Bo Young Cha*, 2012 WL 2025850, at *3 ("[T]he overwhelming trend both in this district and nationwide has been to use LIFO to calculate . . . losses" in securities fraud cases.); *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 402 (D. Mass. 2007) ("Like other courts that have examined the issue, this court concludes as a matter of law that LIFO is the preferred approach for assessing class period damage."); *Hill v. The Tribune Co.*, No. 05 C 2602, 2005 WL 3299144, at *3 (N.D. Ill. Oct. 13, 2005) ("The current majority view . . . is that securities fraud losses should be calculated using LIFO").

Courts routinely accept calculations of harm under the LIFO methodology, and the Court finds no reason to reject Plaintiff's calculation of its losses under this methodology. Defendants have failed to show that the FIFO method is preferable in this case. Plaintiff purchased Wal-Mart securities during the class period, held shares at the time of the corrective disclosures, and has alleged an injury-in-fact under the widely-accepted LIFO methodology. Thus, the Court concludes that Plaintiff has standing to bring its claims, which are typical of the claims of the proposed class.

Accordingly, the typicality requirement under Rule 23(a)(3) is satisfied.

**4. Adequacy of Representation**

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether the representation meets this standard, the court must consider: (1) whether the class representatives have common interests with the members of the class; and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton*, 688 F.2d 562–63.

Defendants have not contested the adequacy of Plaintiff's counsel, and the Court finds that Plaintiff's counsel has sufficient experience handling similar securities class actions to adequately represent the class. Defendants also do not contest that Plaintiff, the proposed class representative, will be capable of vigorously prosecuting this action. Accordingly, the Court concludes that the proposed plaintiff class representative satisfies the adequacy requirement of Rule 23(a)(4).

**B. Rule 23(b)(3)**

Once the Court determines that Rule 23(a)'s requirements are met, Plaintiff must also show that the class meets the definition of at least one type of class under Rule 23(b). *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). In this case, Plaintiff is seeking certification under Rule 23(b)(3). Therefore, Plaintiff must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Predominance**

"The Rule 23(b)(3) predominance inquiry" is meant to "test[] whether proposed classes are

sufficiently cohesive to warrant an adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Supreme Court has indicated that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.*at 625. "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) (citing *Avritt*, 615 F.3d at 1029); *see also Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478-79 (8th Cir. 2016). Thus, the question of predominance begins with the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Section 10(b) and Rule 10b-5 claims require the claimant to prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans and Trust Fund*, 133 S. Ct. 1184, 1208 (2013) (internal quotation omitted). Rule 23(b)(3)'s predominance requirement also applies to questions of damages, which must be capable of measurement on a class-wide basis, and a plaintiff must show a linkage between its theory of liability and theory of damages. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).

Defendants do not dispute that Plaintiff's claims present common questions concerning falsity, materiality, scienter, reliance, and loss causation, which are capable of being proved by common evidence. Instead, Defendants argue that Plaintiff has failed to demonstrate predominance because one of Plaintiff's two proposed damages methodologies, the "the build-up methodology," fails to measure damages on a class-wide basis, is at odds with Plaintiff's theory of liability, and has never been used in a securities class action.

Plaintiff offers two alternative methodologies for measuring damages on a class-wide basis: (1) the share-price methodology; and (2) the build-up methodology. According to Plaintiff, the share-price methodology would establish damages by reference to the market price and the build-up methodology would establish damages by reference to losses that Defendants allegedly fraudulently concealed from investors. Defendants do not dispute that class-wide damages could be demonstrated by the share-price methodology; however, Defendants argue that Plaintiff should be required to proceed only under this methodology. Essentially, Defendants move the Court to preclude Plaintiff from using the build-up methodology to calculate damages in this case.

It is not necessary or appropriate for the Court to consider at this time whether to preclude the build-up methodology. First, to the extent damages are relevant to the predominance inquiry, Defendants concede that the share-price methodology is capable of calculating class-wide damages consistent with Plaintiff's theory of liability. Second, Defendants' argument that Plaintiff should be precluded from using the build-up methodology is premature. Fact discovery is ongoing and will not be complete until February 28, 2017. Plaintiff should not be forced at this stage in the litigation to elect one of its two alternative damages methodologies, given that both parties agree that the share-price methodology comports with Rule 23(b)(3). Class certification is not dependent on the Court's resolution of whether the build-up methodology appropriately measures damages on a class-wide basis. Accordingly, the Court concludes that this case raises common liability issues that could be proved by common evidence, and thus the predominance requirement of Rule 23(b)(3) is satisfied.

**2. Superiority**

Rule 23(b)(3) also requires the Court to find that proceeding as a class is a superior method of adjudication. Fed. R. Civ. P. 23(b)(3). There are four relevant factors for the Court to consider

when deciding whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.*

Plaintiff's satisfaction of the superiority requirement is undisputed. Judicial economy and the best interests of the class members favor class certification. Because the class members seek a determination on the same issues, a class action would enhance judicial economy and efficiency. The individual class members' damages are relatively small, indicating little interest in individually controlling the prosecution of this action. Plaintiff has indicated that there are no other securities actions pending against Defendants involving Wal-Mart's common stock. Concentrating the claims in Defendants' home forum with uniform decisions is desirable, and the Court does not anticipate unreasonable difficulty in managing the class action. Accordingly, the Court finds that the class action method is the superior method to litigate these claims.

## III. CONCLUSION

For the reasons discussed herein, Plaintiff's Motion for Class Certification (ECF No. 229) is **GRANTED**. The City of Pontiac General Employees' Retirement System (PGERS) is named as class representative. The Court approves the law firm of Robbins Geller Rudman and Dowd LLP as class counsel and the law firm of Patton Tidwell & Culbertson as liaison counsel.

**IT IS SO ORDERED**, this 20th day of September, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge