IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CITY OF PONTIAC GENERAL
EMPLOYEES' RETIREMENT
SYSTEM,
Individually and on Behalf of All Others
Similarly Situated                                                                    PLAINTIFF

v.                          Case No. 5:12-cv-5162

WAL-MART STORES, INC., and
MICHAEL T. DUKE                                                                     DEFENDANTS

**ORDER**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Claim for Losses Sustained by the Company, Pursuant to Rule 12(B)(1) and 12(H)(3), or Alternatively, Rule 12(C). ECF No. 303. Plaintiff, City of Pontiac General Employees' Retirement System ("PGERS"), has filed a response in opposition to the motion. ECF No. 305. Defendants have filed a reply and a supplement. ECF No. 312, 399. The Court finds this matter ripe for consideration.

**I. BACKGROUND**

In the amended complaint, PGERS asserts a claim for securities fraud under section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, based on statements contained in a Form 10-Q filed with the SEC on December 8, 2011.[1] PGERS alleges that certain statements in the Form 10-Q were misleading, causing the market price of Wal-Mart Stock to be artificially inflated from the date of the filing of the Form 10-Q, December 8, 2011, until the alleged misstatements were disclosed by an article published in the *New York Times* on April 20, 2012. The Court has certified the following class:

> All persons or entities who purchased or otherwise acquired the publicly traded common stock of Wal-Mart Stores, Inc. ("Walmart") between December 8, 2011 and

---

[1] In Count 1, PGERS states that it and the class have "suffered damages in that [D]efendants' scheme caused them to pay more for Wal-Mart stock than they would have but for defendants' scheme." ECF No. 86, ¶ 57. In Count II, PGERS seeks to recover similar damages from Michael T. Duke as a "controlling person" under Section 20(a) of the Securities Exchange Act of 1934. ECF No. 86, ¶¶ 58-59.

April 20, 2012 (the "Class Period"), and who were damaged by defendants' alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934. Excluded from the Class are defendants and Duke's family, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

Defendants argue that PGERS is seeking improper damages based on injuries to the corporation (Wal-Mart) and is thus asserting a "disguised derivative claim" along with a proper 10b-5 claim. Defendants move the Court to dismiss the improper "disguised derivative claim" because PGERS lacks standing to recover for amounts paid and injuries sustained by Walmart.

## II. DISCUSSION

PGERS alleges that Defendants' fraud caused class members to overpay for shares of Wal-Mart's stock. PGERS proposes two alternative methods for calculating damages to the class: (1) the share-price method and (2) the build-up method. The share-price method would establish damages by reference to the market price, and Defendants do not take issue with this methodology. Defendants argue that PGERS's build-up damages model is improper because it amounts to a "disguised derivative claim," which PGERS lacks standing to assert. Defendants further argue that the Private Securities Litigation Reform Act ("PSLRA") requires PGERS to establish damages with a market-price model.

A. Standing

PGERS's 10b-5 claim arises under the Securities Exchange Act of 1934, and is therefore governed by federal law. However, "[w]hether a claim is derivative or direct is a questions of state law." *Staehr v. W. Capital Res., Inc.*, 2011 WL 2633894, at *4 (D. Minn. July 6, 2011) (citing *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 492 (8th Cir. 2004)). In this case, because Wal-Mart is incorporated in Delaware, the Court will apply Delaware law. "Once a court has characterized an action as direct or derivative, federal law determines whether the plaintiff has standing to maintain the lawsuit." *Firstcom, Inc. v. Qwest Corp.*, 2006 WL 2666301, at *4 (D. Minn. Sept. 18, 2006).

The Delaware Supreme Court has set forth the law to be applied "in determining whether a

stockholder's claim is derivative or direct." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). The issue "turns *solely* on the following question: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Id.* (emphasis in original).

According to PGERS, "[t]he build-up method measures 'total loss to the firm' or 'total loss to shareholders' by combining (1) direct costs resulting from a company's misconduct which were unknown to investors when they bought its stock, and (2) the company's reputational loss, an empirically derived multiple of direct costs." ECF No. 252, p. 22-23. Defendants argue that injury to Wal-Mart's reputation, investigation costs paid by Wal-Mart, and fines and penalties paid or to be paid by Wal-Mart are losses sustained directly by Wal-Mart even if such losses also flow through and affect the price value of its stock. Thus, Wal-Mart asserts that PGERS's build-up method is an attempt to recover corporate damages directly and should be re-characterized as a derivative claim.

PGERS argues that the class members were harmed directly when Wal-Mart's alleged fraud caused them to overpay for Wal-Mart's stock and that the build-up method is a way to measure damages to these class members. As mentioned above, the *Tooley* case requires the Court to consider the following two questions when determining whether the claims are derivative or direct: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually). *Tooley*, 845 A.2d at 1033. In the present case, it is clear that only class members suffered the alleged harm of stock overpayment. Further, if class members obtain a judgment against Defendants, class members, not Wal-Mart, will receive the proceeds of such judgment.

As in all direct securities fraud cases, the damages in this case consist of "the difference between the fair value of all that the [plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct. *Affiliated Ute Citizens v. United States*, 406 U.S. 158,

3

155 (1972).  This case involves alleged damages that are separate and distinct from any harm to Wal-Mart.  Because PGERS alleges that Defendant's fraud caused class members to overpay for shares of Wal-Mart's stock, the alleged injury to the class members is a direct injury that they have standing to pursue.

It does not appear that standing is the real issue here.  Instead, the parties disagree as to the proper method for calculating damages to the class.  PGERS has presented two alternative methods, but Defendants ask the Court to preclude PGERS from relying on one of these methods:  the build-up method.  However, Defendants' argument that PGERS should be precluded from using the build-up methodology is premature.  The Court declines, at this stage of the litigation, to force PGERS to elect one of its two alternative damages methodologies, given that discovery is not complete and PGERS's damages proof will likely require expert analysis and testimony.

### B. PSLRA

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants argue that they are entitled to judgment on the pleadings regarding PGERS's use of the build-up method because the PSLRA prohibits recovery under this methodology.

The PSLRA's damages-limitation provision provides as follows:

> (1) In general.  Except as provided in paragraph (2), in any private action arising under this [chapter] in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4.  Defendants argue that this provision limits PGERS to a market-price methodology in measuring damages to the class.  The Court disagrees.  A plain reading of this provision reveals that it does not mandate the establishment of damages by reference to market price.  Instead, this provision caps damages at the difference between the purchase price and the mean trading price established during the ninety-day "bounce-back" period only in cases where "the plaintiff seeks to

4

establish damages by reference to the market price of a security." 15 U.S.C. § 78u-4. In what appears to be an effort to avoid this cap on damages, PGERS presents an alternative method for calculating damages—the build-up method—which does not reference market price. Nothing in the provision cited above, however, limits PGERS to measuring damages by reference to market price. It simply states that damages will be limited in private actions in which the plaintiff seeks to establish damages by reference to the market price. Because the Court finds that the PSLRA does not prohibit recovery under PGERS's build-up method, Defendants are not entitled to judgment on the pleadings.

### III. CONCLUSION

For the reasons discussed herein, Defendants' Motion to Dismiss Plaintiff's Claim for Losses Sustained by the Company, Pursuant to Rule 12(B)(1) and 12(H)(3), or Alternatively, Rule 12(C) (ECF No. 303) is **DENIED**.

**IT IS SO ORDERED**, this 29th day of September, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge